# United States Court of Appeals
## For the First Circuit

No. 08-2292

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE LUIS GALLARDO-ORTIZ, a/k/a Legend,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U. S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Chauncey B. Wood, with whom Wood & Nathanson, LLP was on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, was on brief, for appellee.

January 24, 2012

**HOWARD**, **Circuit Judge**.  By plea agreement, defendant-appellant Jorge Luis Gallardo-Ortiz pled guilty to two criminal counts involving his unlawful possession of ammunition and a firearm, a Glock Model 27, which is .40 caliber handgun capable of operating as a fully automatic machine gun.  See 18 U.S.C. §§ 922(g)(1), 922(o); see also 18 U.S.C. § 921(23) (incorporating definition of "machinegun" firearm under 26 U.S.C. § 5845(b)).  The parties recommended a sentence of 33 months of incarceration, which the district court rejected.  Instead, after considering the particulars of the case in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), the court imposed a sixty-month sentence of incarceration -- nineteen months beyond the top of the guidelines sentencing range (GSR) of 33-41 months -- and three years of supervised release.  Gallardo appeals, arguing that the stringent sentence is tainted by procedural error and is substantively unreasonable.[1]  We disagree and affirm the sentence.

## I. Background

In the early morning hours of April 16, 2007, police in San Juan, Puerto Rico received a call that an armed male was seen in the vicinity of the Manuel A. Perez housing project.  Two responding officers promptly arrived at the scene around 1:45 a.m.

---

[1]The government agrees with the appellant's contention that the "waiver of appeal" clause in his plea agreement does not preclude this appeal because the sentencing judge did not impose the recommended sentence.

and saw Gallardo holding a firearm. Catching sight of the officers, Gallardo fled on foot. The officers quickly captured him and recovered his Glock .40 caliber pistol.

The loaded gun was equipped with a conversion clip allowing it to operate as a fully automatic machine gun and accept extended ammunition magazines. Gallardo also had on his person two extended magazines, loaded with twenty-three and twenty-seven rounds, respectively.

A federal grand jury later returned a three-count indictment charging Gallardo with (1) possession of ammunition and a firearm by a convicted felon, see 18 U.S.C. § 922(g), (2) knowing and intentional possession of ammunition and a machine gun, see 18 U.S.C. § 922(o), and (3) knowing possession of ammunition and a firearm within 1,000 feet of a school zone, see 18 U.S.C. § 922(q)(2)(A). Gallardo pleaded guilty to the first two charges, and the government agreed to dismiss the third. The parties also agreed to recommend a sentence of 33 months of incarceration, the bottom of the advisory GSR calculation of 33-41 months. See United States v. Booker, 543 U.S. 220, 259-60 (2005) (declaring the sentencing guidelines advisory).

At the sentencing hearing, the district court informed the parties that it had carefully considered the indictment, the charges filed within the indictment, and the plea agreement. It also had reviewed the pre-sentence investigation report (PSR) in

detail with the probation officer. The court informed Gallardo of its intent to depart upward from the recommended sentence. Gallardo then presented his allocution, expressing his regret and his desire to serve minimal incarceration so that he could continue to financially support his family. After requesting two changes to the PSR, which the court largely obliged, Gallardo assented to the contents of the report.

Ultimately, the district court rejected components of Gallardo's allocution and concluded that a sentence within the GSR[2] would not constitute an appropriate sentence. Instead, after considering the section 3553(a) factors, the judge imposed a sentence outside the guideline range in order to reflect both the seriousness of the offense and its nature and circumstances, to promote respect for the law, to protect the public from further crimes by the appellant and to otherwise address the issues of deterrence and punishment. As noted earlier, the sentencing judge imposed a sixty-month sentence of imprisonment, as well as three years of supervised release. This timely appeal followed.

## II. Discussion

On appeal, Gallardo argues that his sentence is constitutionally unreasonable because the district court committed numerous procedural and substantive errors when devising the

---

[2]The record reflects that the district court reviewed and accepted the GSR calculation in the PSR, and no one disputes its accuracy.

sentence.  Before turning to the specifics of his arguments, we frame the governing law.

Sentencing "is much more an art than a science," United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011), and "appellate review of sentencing decisions is limited to determining whether they are reasonable," Gall v. United States, 552 U.S. 38, 46 (2007) (internal quotation marks omitted).  Reasonableness correlates with the abuse of discretion standard and incorporates two review components -- discerning whether the challenged sentence is procedurally sound and substantively reasonable.  See id. at 51; United States v. Thurston, 544 F.3d 22, 24-25 (1st Cir. 2008). Procedural soundness requires that the district court must not have committed "a procedural error in arriving at the sentence." United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010); see Gall, 522 U.S. at 51 (providing examples of procedural errors, including a sentencing judge "selecting a sentence based on clearly erroneous facts").  For substantive reasonableness, the linchpin is "a plausible sentencing rationale and a defensible result." United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011) (internal quotation marks omitted).

An established roadmap exists to guide sentencing courts when discerning a reasonable sentence, which begins with assessing the GSR.  See Gall, 552 U.S. at 49-50; United States v. Madera-Ortiz, 637 F.3d 26, 29-30 (1st Cir. 2011); United States v.

Martin, 520 F.3d 87, 91-92 (1st Cir. 2008).  The sentencing court must also consider a number of relevant factors, see 18 U.S.C. § 3553(a), but "the weighting of those factors is largely within the court's informed discretion." Clogston, 662 F.3d at 593; see Gall, 552 U.S. at 49-50 (holding that while the GSR is a valuable starting point, the sentencing judge must make an "individualized assessment based on the facts presented").  Indeed, "[t]here is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes," United States v. Walker, No. 10-1092, 2011 WL 5865652, at *15 (1st Cir. Nov. 23, 2011), and sentencing decisions are entitled to great deference given the superior judicial vantage point of sentencing judges, see Gall, 552 U.S. at 51-52.  Our task is to determine whether the district court's informed decision falls within that universe, not to supplant its judgment.  See Walker, 2011 WL 5865652, at *15; Clogston, 662 F.3d at 593.

We note two additional principles before turning to the details of the sentencing in this case.  First, we are mindful that the sentencing judge may consider all relevant information that has "sufficient indicia of reliability to support its probable accuracy"; the usual rules of evidence do not pertain at sentencing.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (internal quotations omitted).  Further, the sentencing court "has wide discretion to decide whether particular

evidence is sufficiently reliable to be used at sentencing." Id.; see United States v. Marsh, 561 F.3d 81, 87 (1st Cir. 2009) (determining that the district court is free to credit the descriptions contained in the PSR when the defendant does not contest the reliability of the information in the report).

Second, our appellate review includes consideration of the extent of any variance from the GSR in the context of the totality of the circumstances. See Gall, 552 U.S. at 51. A dramatic variance, however, cannot unduly influence our review of substantive reasonableness. Thurston, 552 F.3d at 25; see Gall, 552 U.S. at 47 (rejecting an appellate rule that requires "extraordinary" circumstances to justify a sentence outside of the GSR calculation). Nevertheless, the sentencing court's reasons for its deviation "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender; must add up to a plausible rationale; and must justify a variance of the magnitude in question." Martin, 520 F.3d at 91. In the end, the standard of reasonableness applies regardless of whether the challenged sentence falls inside or outside of the GSR. United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc); see also Martin, 520 F.3d at 92 (noting that once the court has duly calculated the GSR, sentencing "becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be

precisely described" (internal quotation marks omitted)). Against this backdrop, we review the sentencing decision before us.

The sentencing judge provided several reasons for imposing a sentence in excess of the GSR. See Clogston, 662 F.3d at 592 (noting that the appellate court "must assay the record as a whole to gauge the sentencing judge's thought process"). First, she focused on the seriousness of the offense, emphasizing Gallardo's in-hand possession of a loaded high-capacity fully automatic machine gun while publicly arguing with a family member in a protected school zone. Second, the sentencing judge noted Gallardo's violent character, displayed in part by his criminal history and post-arrest admissions to law enforcement.

Third, the judge underscored her concern for public safety and for fostering respect for the law, as well as Gallardo's need for a strong deterrent. In this context, the judge noted the minimal accountability Gallardo had faced in his life and his continued failure to refrain from illegal activity. The court also remarked on Gallardo's lack of maturity and consistent exercise of poor judgment, noting especially Gallardo's use of his limited financial resources to support his illegal conduct. Finally, the court noted Gallardo's misapplication of his intelligence for manipulative purposes, his conduct in lying to the police after his arrest, and his efforts to minimize his culpability to the probation officer. The appellant challenges several aspects of the

sentencing decision on both procedural and substantive grounds, which we address in turn.[3]

## A. Claimed Procedural Error

The appellant claims that the sentencing decision is procedurally flawed because it rests on a "series of errors" and "speculative factual assertions." He avers that the significance of these errors is "magnified here because the district court imposed a sentence far outside the GSR" and "nearly double the parties' recommendation." He specifically targets the manner in which the district court relied on his employment history, his criminal record, the circumstances of his offense, and his post-arrest interaction with law enforcement. His plaints, however, rest on an overly myopic focus and a slanted recasting of portions of the court's sentencing decision. Our review of the targeted court findings and conclusions, in the context of the whole fabric, reveals no district court error. See Clogston, 662 F.3d at 592 (emphasizing the importance of appellate court reviewing "the

---

[3]The parties skirmish over the appropriate standard of review. The government argues that plain error should apply because Gallardo failed to make timely objections below. The appellant contends, at least with respect to the alleged procedural flaws, that any error should result in automatic remand for re-sentencing. We strongly doubt the viability of the appellant's position, see, e.g., United States v. Davila-Gonzalez, 595 F.3d 42, 47 (1st Cir. 2010), but we need not rule on its merits because he has not, in all events, established any district court error, see, e.g., United States v. Southern Union Co., 630 F.3d 17, 38 (1st Cir. 2010).

record as a whole to gauge the sentencing judge's thought process"). We take up each criticism.

### 1. Employment History

The appellant first claims that the district court erroneously concluded that his employment history illustrates that he had generated his income by illicit means, and that he was not able to meet his financial obligations to his family. Gallardo focuses on the following statements by the judge: "Throughout your life, you have had no steady record of employment, no steady salary, even though questionable how you obtain or provide income, or even $1,500 to purchase a weapon converted to a machine gun, is questionable"; and "[Your] way of supporting [your children] and gaining economic support is highly questionable in as much as there is no steady record of employment or steady record of income." According to the appellant, the district court's conclusions are directly undermined by the PSR's recitation of his extensive legitimate work history. He, however, fails to account for the context of the court's statements and misconstrues their nature.

The court made the above-quoted statements in the context of considering the veracity of Gallardo's allocution and when concluding that he lacked maturity in exercising judgment about how to properly prioritize his limited income. The court plainly doubted Gallardo's self-portrayal as a responsible family man who had been financially supporting his family, including his ten

children, his current wife, and his mother.  In so doing, the court juxtaposed his spotty employment history and lack of a consistent income against his history of spending money on himself rather than on his family.  The judge pointedly noted Gallardo's $1,500 machine gun purchase and his financial investment in his persistent drug use.  She also noted that the record seemed to contradict Gallardo's claim that he had been helping provide for his mother's financial needs.  In short, the court was convinced that Gallardo's skewed allocution and lack of maturity, as a 37-year-old grown man and father of ten, was pertinent to assessing his character in full when rendering its sentencing decision.  In sum, the record belies the appellant's characterization of the court's statements as displaying a belief that Gallardo earned money illicitly or that he was unable to support his family financially.

### 2. Criminal History

The appellant next challenges several aspects of the manner in which the district court considered his criminal history. None is availing.  We outline his history, and the court's corresponding analysis of it, to frame his specific claims of error.

The appellant's record includes a 1991 conviction for drug possession, and 1991 and 1993 convictions for domestic violence related conduct.  A two-year prison sentence was imposed for the drug conviction, but the district court noted that he

actually served seven months of incarceration. Fines were assessed for both convictions involving domestic violence. The district court emphasized the circumstances of the 1993 conviction, in which Gallardo entered the home of the mother of three of his children -- despite the existence of a protective order -- and beat her in the children's presence. From 2000 to 2006, Gallardo faced several charges alleging weapons violations, a drug violation and domestic violence conduct; all or most were dismissed for speedy trial violations. The district court referred to this criminal history in assessing different aspects of Gallardo's character, and the appellant challenges two particular conclusions drawn by the court about the minimal repercussions that he had faced in the past and about his violent nature.

He first points to the court's statement that he "never [had] been able or been placed in a situation to confront consequences of [his] actions." He contends that this finding is erroneous because the court failed to account for his prior two-year sentence imposed for his 1991 drug conviction. A view through a wider lens, however, reveals that the sentencing judge specifically considered that conviction and corresponding sentence when expressing concern that his past encounters with the legal system resulted in relatively minimal consequences. The court underscored: "[e]ven for those charges in which you were convicted it seems you served a very short period of imprisonment, ranging

-12-

from 7 months before you were paroled"; this was a direct reference to his punishment for the 1991 drug conviction. Thus, his prior punishment did not go unnoticed by the district court.

The appellant also contends that the court's "no consequences" statement reflects an improper engagement in "rank speculation" based on his "bare arrest record" to conclude that he actually committed the charged criminal conduct underlying the dismissed charges. He characterizes the court's statement as meaning that he "should have had to face consequences" for his conduct underlying the dismissed charges, and that he "avoided the consequences of these alleged actions." According to the appellant, because the charged conduct was never proven true and there was no reliable evidence establishing that it occurred, the dismissed charges were of no probative value in assessing his "history and characteristics." The argument lacks merit.

When devising the appellant's sentence, the court took into account the fact that numerous charges had been lodged against Gallardo from 2000 to 2006 but he never had to face prosecution for them due to dismissal on speedy trial grounds. Indeed, in looking at the totality of Gallardo's history, the sentencing judge found: "from prior brushes with the law and encounters with the legal system, [Gallardo] has not learned to exercise good judgment or refrain from engaging in illegal conduct." In the context of the sentencing decision, we do not understand the court's "no

consequences" statement as either explicitly or implicitly rendering a value judgment on the legitimacy of the dismissed charges themselves or casting a nefarious shadow on Gallardo avoiding prosecution. Rather, the judge was remarking that the nature of the dismissals negated any legal compulsion for Gallardo to contend with the legal system and face whether the allegations actually held weight. We explain further.

The court viewed the numerous dismissed charges, which lodged serious allegations and spanned over half a decade, as couched between his 1990s convictions for drug possession and domestic violence on one hand, and his self-professed persistent drug habit and present serious gun crimes on the other hand. Remarking on this panoply, the court noted several details: (1) Gallardo's flagrant disregard of the law displayed by his violation of a protective order during his 1993 crime; (2) the relatively minimal consequences he had faced for his early convictions; and (3) the fact that he continued to choose a path of unlawful conduct in spite of the fortuity of about a half dozen criminal charges being dismissed on speedy trial grounds from 2000 to 2006. There was no abuse of discretion in the court remarking on the dismissed charges in this context, when determining the stringency of the sentence necessary for purposes of deterrence, public safety, and fostering respect for the law.

Next, the appellant seems to challenge the district court's reliance on the dismissed charges when concluding that he displayed a violent character. Specifically, after it considered the nature of his criminal convictions, the court commented that Gallardo's arrest record also reflected "similar violent conduct in as much it was domestic violence, two weapons possession, also dismissed and a drug case also dismissed." We have cautioned against district courts relying on mere arrests as indicative of a defendant's character to justify an upward departure from the GSR since a criminal charge alone does not equate with criminal guilt of the charged conduct. See United States v. Zapete-Garcia, 447 F.3d 57, 60-61 (1st Cir. 2006); see also United States v. Berry, 553 F.3d 273, 281-85 (3d Cir. 2009) (discussing proper reliance on prior arrests for rendering sentencing decisions). This premise, however, does not advance Gallardo's cause because the court's emphasis on his violent character, as one part of its sentencing reasoning, is supported by reliable evidence. See Cintrón-Echautegui, 604 F.3d at 6 (noting the district court's discretion to rely on reliable evidence for sentencing purposes).

Gallardo's own incriminating statements made after his arrest for the present conviction are indicative of his current violent propensity and supplement the violence displayed by his earlier criminal convictions. Specifically, the appellant does not dispute the PSR's account of his explanation to the police that he

-15-

took flight from them because he thought that his current wife had called them and they were going to arrest him for domestic violence. This self-chosen excuse supports the court's finding that violence remained a part of Gallardo's character. Indeed, the district court was troubled by his further admission to law enforcement that he purchased the Glock pistol for his own "protection." Again, the appellant's own words support the court's conclusion about his violent character, because the weapon he selected had been converted into a fully automatic machine gun, a firearm with destructive power disproportionate to owning a gun for purely self-defense purposes under ordinary circumstances. Under the circumstances of this case, we reject the appellant's attempt to undermine the district court's finding that his violent character properly served as one among several reasons under section 3553(a) for enhancing his sentence. Cf. United States v. Politano, 522 F.3d 69, 75 n.3 (1st Cir. 2008) (noting that in a case where a sentence variance is due solely to a prior arrest or outstanding charge, more explanation for the variance may be required (citing Zapete-García, 447 F.3d at 60)).

### 3. The Circumstances of the Offense

The appellant next challenges the manner in which the district court relied on the circumstances of the offense to enhance his sentence. He first contends that the court erroneously relied upon Guideline §5K2.17 to conclude that the offense

-16-

warranted an upward adjustment from the GSR. See United States v. Anonymous Defendant, 629 F.3d 68, 73 (1st Cir. 2010) (noting that a sentencing judge's "material error of law constitutes a per se abuse of discretion"). This guideline provides in part: "If the defendant possessed a semiautomatic firearm capable of accepting a large capacity magazine in connection with a crime of violence or controlled substance offense, an upward departure may be warranted." (Emphasis added). While the government agrees that §5K2.17 does not apply to this case, it points out that the district court did not actually rely on that section to render its sentencing decision. We agree with the government, and again we consider the sentencing court's actions in context.

The district court first reviewed the proper GSR calculation, then set forth the factors that it considered when deciding to deviate from the resulting range, including "the seriousness of the offense." The remark challenged by the appellant appears in the court's review of the gravity of Gallardo's crime:

> there exists grounds that would have warranted a departure, for example under 5K2.17, use of a high capacity semi-automatic, it is clear in [this] case there were two large capacity magazines with a capacity of 30 rounds and two were in the possession of this defendant with 23 and 27 rounds respectively.

(Emphasis added.) The court also depicted the crime as serious due to its occurrence in a "protected location that being a school or

-17-

public housing project and that count [three] would have provided for double the statutory penalty, which is 20 years . . . ." While the court ultimately considered a variety of factors when deciding to impose an increased sentence, it never revisited section 5K2.17 nor did it otherwise gauge the propriety of the sentence in terms of Gallardo's use of the firearm "in connection with a crime of violence or controlled substance offense."

Thus, although it mentioned section 5K2.17, the court actually relied upon Gallardo's use of a high power loaded firearm and his possession of an abundance of ammunition within a protected location to illustrate the seriousness of his crime. Indeed, the court emphasized the "very serious" nature of the offense as follows: "We are talking here not about a regular semi-automatic but his pistol was converted to work as a fully automatic weapon capable of using large magazines, two of which were found in the defendant[']s possession." In short, the record shows, at most, that the court may have mistakenly referenced guideline section 5K2.17 as a guidepost for the seriousness of high-capacity gun offenses; it did not, however, rely on the actual substance of that guideline section to justify an increase in the appellant's sentence.

The appellant next challenges the court's depiction of the offense as a "very serious one" based on its factual rendition of the crime as "occur[ing] at a time in which he was questioning

-18-

and yelling in a public street at 1:45 a.m., in a quarrel with his brother-in-law." According to Gallardo, "there was no evidence that [he] had been speaking to anyone much less yelling or arguing at any point," and the government's "description of the offense" did not include any mention of a quarrel with a family member. The appellant, however, does not dispute that the PSR itself documents that he told the police that he had began arguing with his brother-in-law at or around the time that they spotted him holding the loaded Glock pistol. See United States v. Davila-Gonzalez, 595 F.3d 42, 45 (1st Cir. 2010) (noting that when sentencing appeal follows a guilty plea, reviewing court may glean facts from unchallenged portions of the PSR). Whether or not he was actually yelling makes no difference to the valid concern the district court expressed about the obvious dangerousness of the volatile situation.

### 4. Post-Arrest Interaction with Law Enforcement

Finally, the appellant contends that the district court procedurally erred by taking into consideration that he initially lied to law enforcement about where he had obtained the gun, because he eventually told the truth and received a three-level GSR reduction for accepting responsibility. We fail to discern how his decision to accept a plea bargain and take responsibility for his illegal conduct, while commendable, negates the obvious impropriety of spinning a tale for the police in an attempt to avoid

-19-

prosecution. Indeed, the district court also underscored his attempt to minimize and conceal his responsibility during his discussions with the probation officer. We give this argument no further attention.

## B. Claim of Substantive Unreasonableness

In challenging his sentence as substantively unreasonable, Gallardo first argues that the procedural errors "without more" demonstrate "the ultimate sentence imposed was substantively unreasonable." This argument is a nonstarter, in view of the fact that the appellant has not established any procedural error. He goes a step beyond, however, and argues that "there were other factors relied upon by the court which fell short of clear error, but which nevertheless contributed to the substantive unreasonableness of the sentence." We are unpersuaded.

The "other factors" that the appellant identifies consist of plaints that the sentencing judge failed duly to consider (1) the age of his 1991 conviction and corresponding prison sentence, (2) the de minimus risk that his criminal conduct in a school zone actually presented to children given the time of the crime (1:45 in the morning) and (3) the so-called "parsimony" principle. The first two claims amount to little more than disagreeing with the weight that the sentencing judge afforded to certain aspects of the sentencing factors. This exercise, however, is peculiarly within the sentencing court's discretion, and Gallardo offers no

meritorious reason to interfere with that judgment. <u>See</u> <u>Gall</u>, 552 U.S. at 51-52 (noting that sentencing judge has a judicial vantage point superior to that of the reviewing appellate court); <u>United States</u> v. <u>Madera-Ortiz</u>, 637 F.3d 26, 31 (1st Cir. 2011) (holding that "judgment calls" on the weight to be given various relevant factors "are for the sentencing court, not for this court"); <u>see also</u> <u>Davila-Gonzalez</u>, 595 F.3d at 49 (concluding that the district court's silence about a sentencing angle advocated by a party did not undercut the sentencing decision where the record "evinc[ed] a sufficient weighing of the section 3553(a) factors").

As his final tack, the appellant contends that the sentencing judge failed to abide by the parsimony principle as illustrated by the disproportion between his only prior term of incarceration of seven months for his 1991 offense and the challenged sixty-month term. <u>See</u> 18 U.S.C. § 3553(a) (requiring judicial temperance such that the sentence imposed must be "sufficient, but not greater than necessary, to comply with" the purposes of sentencing); <u>see</u> <u>United States</u> v. <u>Rodriguez</u>, 527 F.3d 221, 228-29 (1st Cir. 2008) (discussing Supreme Court's decision in <u>Kimbrough</u> v. <u>United States</u>, 552 U.S. 85 (2007), as reflective of the parsimony principle). He also emphasizes the time span between his last conviction in 1993 and his 2007 criminal conduct. Again, the challenge falls short of the target.[4]

---

[4]We need not address the government's preservation attack because we can resolve the merits of this argument rather quickly.

-21-

The sentencing court's reasoning for imposing an increased sentence duly acknowledges the parsimony principle. The judge provided a myriad of reasons, in accord with the § 3553(a) sentencing factors, for imposing the enhanced sentence of sixty-months' imprisonment on a convicted felon who possessed a machine gun, who also possessed two extended magazines filled with an abundance of ammunition, who brandished the high-capacity loaded weapon in public amidst an argument with a family member, and who fled from the police out of fear of being incarcerated for domestic violence. As outlined earlier, the judge carefully considered both the nature and circumstances of the crime, as well as Gallardo's personal history and character -- including the minimal length of his prior incarceration in the early 1990s and other criminal history. Further, the judge expressed legitimate concern about providing adequate deterrence and protecting public safety, finding that Gallardo had "not learned to exercise good judgment or refrain from engaging in illegal conduct." In short, the sentencing judge was aware of the significant increase in incarceration that she was imposing on the appellant and rooted that decision in the serious nature of the particular offense and the characteristics of the defendant.

Although determining whether and how far a sentencing judge may exceed a GSR may not always be an easy task, we are convinced that the judge's explanation in this case exhibits a

plausible rationale and that she reached a sensible sentence within the range of reasonableness.  See United States v. Scherrer, 444 F.3d 91, 95  (1st Cir. 2006) (affirming a sentence in excess of GSR where judge relied on statutorily-approved purposes for sentencing and provided reasonable basis for exceeding the guideline maximum); see also Martin, 520 F.3d at 91 (noting that Gall made clear that district courts have "wide latitude in making individualized sentencing determinations, thus guarding against the institutionalization of an impermissible presumption that outside-the-range sentences are unreasonable").  This ends the matter.

### III. Conclusion

The district court in this case ably and conscientiously sifted the myriad of considerations that go into a criminal sentence and used sound judgment born of its experience and superior vantage point.  The appellant has failed to establish that the district court committed either procedural or substantive error in exercising its sentencing judgment.  Accordingly, his sentence is **affirmed**.