# United States Court of Appeals
## For the First Circuit

No. 14-1369
No. 14-1371

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN G. QUIÑONES-MELÉNDEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Rafael F. Castro Lang on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

July 1, 2015

**BARRON**, **Circuit Judge**.  The defendant challenges his conviction and sentence for various gun crimes on a number of grounds.  Finding no error, we affirm.

## I.

On August 8, 2013, a federal grand jury in Puerto Rico indicted Juan G. Quiñones-Meléndez on one count of unlawfully possessing a machinegun, in violation of 18 U.S.C. § 922(o). Roughly two weeks later, on August 21, 2013, another federal grand jury in Puerto Rico indicted Quiñones on two further counts: one count of unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of aiding and abetting another individual, Orlando Mojica-Rodríguez, in the unlawful possession of automatic firearms, in violation of 18 U.S.C. § 922(o).  Quiñones subsequently pled guilty, in separate agreements, to the August 8 unlawful-possession count and the August 21 aiding-and-abetting count.

In the plea agreements, the parties agreed that Quiñones's base offense level was 22 and that Quiñones deserved a three-level reduction in his offense level based on acceptance of responsibility.  The agreements contained no stipulation regarding Quiñones's criminal history category.  The parties did agree, however, that they would recommend to the District Court the higher

end of the applicable guidelines range depending on the criminal history category. The parties also stipulated that, although neither side would seek any further departures or variances from the guidelines limit, the government could argue that the sentences for the two pleaded-to offenses should run consecutively, and the defense could argue that the two sentences should run concurrently.

The probation office determined that Quiñones's criminal history fell into category II under the guidelines, leading to guidelines ranges of 33-41 months and 41-51 months, respectively, for each of Quiñones's offenses. At the sentencing hearing, both the government and the defense argued for the higher end of that range, but Quiñones argued for the sentences for each offense to run concurrently to one another, while the government argued for consecutive sentences for a total of 92 months. The District Court, at the end of the lengthy sentencing hearing, decided that neither the sentence recommended by the government nor the sentence recommended by the defense sufficiently accounted for the seriousness of the offense, the defendant's personal characteristics, the context in which the offenses were committed, and a number of other factors. The District Court thus imposed a higher sentence of 60 months for each offense. And further, the District Court decided that the sentences for each offense would

run consecutively, so that the total sentence was 120 months in prison.

Quiñones now appeals on a number of grounds.[1] We discuss each contention in turn.

**II.**

According to Quiñones, the prosecution breached the plea agreements by seeking at the sentencing hearing to introduce video footage depicting Quiñones's August 20, 2013, arrest. The video shows Quiñones, who was then at a gas station, attempt to flee from law enforcement by backing his car into a U.S. Marshals vehicle -- which, though unmarked, had strobe lights that were visible but not operating during this episode. The video also shows Quiñones surrender when the Marshals -- who were then wearing bulletproof vests emblazoned with the words "U.S. Marshal" -- appear in his sightline.

Quiñones contends that the government sought to introduce this video evidence to convince the District Court to

---

[1] The plea agreements did contain waiver-of-appeal clauses under which Quiñones agreed to waive his right to appeal the judgment and sentence should the District Court sentence him in accordance with the terms of the agreements. But because the District Court did not sentence Quiñones in accordance with the terms of the plea agreements, the government does not seek to enforce the waiver-of-appeal provisions.

apply an enhancement under the sentencing guidelines for reckless endangerment or obstruction of justice. Quiñones thus contends that the government was attempting an end-run around the plea agreements, which explicitly provided that neither the government nor the defense would seek any departures or variances from the recommended guidelines limit.

The government is barred not only from "explicit repudiation of the government's assurances" contained in a plea agreement but also -- "in the interests of fairness" -- from undertaking "end-runs around them." United States v. Rivera-Rodríguez, 489 F.3d 48, 57 (1st Cir. 2007) (quoting United States v. Voccola, 600 F. Supp. 1534, 1537 (D.R.I. 1985)). But in this case, there was no such end-run.

Quiñones's plea agreements specifically contemplated that the government could argue that the sentences for the two pleaded-to offenses should run consecutively. And a district court, in deciding whether to impose concurrent or consecutive sentences, see 18 U.S.C. § 3584(a), must consider the background and characteristics of the offender, the nature and circumstances of the offenses, the need for imposing consecutively running sentences, and the other sentencing "factors set forth in section 3553(a)," id. § 3584(b). Indeed, 18 U.S.C. § 3661

specifies that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

We thus agree with the District Court that the prosecution was offering evidence to assist the District Court in deciding whether to impose consecutive or concurrent sentences, just as the parties' agreements allowed. And, in consequence, we hold that the prosecution did not breach the plea agreements. See United States v. Miranda-Martinez, ___ F.3d ___, 2015 WL 3876601 (1st Cir. June 24, 2015).

## III.

The next issue concerns whether the sentence the District Court imposed was unreasonable. We review a sentence's reasonableness for abuse of discretion. United States v. Zapata-Vázquez, 778 F.3d 21, 23 (1st Cir. 2015). In doing so, we begin by "first look[ing] for procedural error," including to see whether the District Court "'fail[ed] to consider appropriate sentencing factors, predicat[ed] a sentence on clearly erroneous facts, or neglect[ed] to explain the rationale for a variant sentence

- 6 -

adequately.'" Id. (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)).

### A.

### 1.

Quiñones contends that we need to remand the case for resentencing before a different judge because the District Court relied on extra-record material that led it to acquire a "pre-formed bias" against him as a "very dangerous individual." But the only cases Quiñones cites in support of the remedy he requests are ones in which procedural error was already established because the district court provided the defendant with no meaningful opportunity to prepare and present a response to material on which the sentence was based. See, e.g., United States v. Zavala-Martí, 715 F.3d 44, 56-57 (1st Cir. 2013); United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991). And so, following his lead, we look to see whether the District Court committed any procedural error by drawing on extra-record information.

Quiñones's contention that the District Court did just that traces in part to the sentencing hearing for Orlando Mojica-Rodríguez, Quiñones's co-defendant for the August 21, 2013, offenses. During that hearing -- held on January 16, 2014, nearly two months before Quiñones's sentencing hearing -- the District

Court thrice referred to "the person who was with" Mojica as a "very dangerous individual."  And it is uncontested that Quiñones was the "person" to whom the District Court was then referring.[2]

"It is abundantly clear," however, that a sentencing court has "the ability to consider information from court proceedings at which the defendant was not present, such as a co-defendant's sentencing hearing."  United States v. Millán-Isaac, 749 F.3d 57, 69 (1st Cir. 2014).  To be sure, that discretion is bounded.  The sentencing court must "base its sentence only upon information with 'sufficient indicia of reliability to support its probable accuracy,'" id. at 70 (quoting United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012), and "afford the defendant an opportunity to respond to the factual information offered against him at sentencing," id.  But the District Court did not cross those bounds here.

We see no basis for deeming the information the District Court relied upon to be unreliable.  The District Court explained at Quiñones's sentencing hearing the precise basis for its expressed view that Quiñones was a "very dangerous individual."

---

[2] The District Court, during Mojica's sentencing hearing, specifically referred to the "very dangerous individual" as "El Manco."  "El Manco" is Quiñones's nickname.

The District Court cited to Mojica's presentence report in general, which the District Court characterized as "very similar" to the information in Quiñones's own presentence report. And the District Court cited more specifically to the fact that Quiñones was a federal fugitive when he and Mojica were arrested and to Quiñones's extensive criminal record. Those facts are corroborated by the unobjected-to information in Quiñones's own presentence report.

Nor can Quiñones credibly claim to have been unfairly surprised by the information on which the District Court based its judgment that Quiñones was a "very dangerous individual." See id. (a criminal defendant must not "be placed in a position where, because of his ignorance of the information being used against him, he is effectively denied an opportunity to comment on or otherwise challenge material information considered by the district court" (quoting Rivera-Rodríguez, 489 F.3d at 54)). In fact, Quiñones's counsel was the first one to raise the concern about the District Court's statements regarding Quiñones at the earlier sentencing hearing for Mojica. This case is thus not like the one on which Quiñones relies, in which we held it was procedural error to rely on evidence from an earlier proceeding involving another defendant at which the appellant was not present.

See <u>United States</u> v. <u>Avilés-Santiago</u>, 558 F. App'x 7, 10 (1st Cir. 2014).

Finally, Quiñones does suggest that the District Court also relied for its opinion about Quiñones's dangerousness on an unidentified source of information not included in the record in Quiñones's case or in Mojica's. But Quiñones's counsel has never identified what any such extra-record source of information might be -- either when asked to do so by the District Court at the sentencing hearing or in these appeals. And thus, this wholly unfounded assertion supplies no possible ground for questioning the propriety of the District Court's actions at sentencing. We thus find no error here.[3]

**2.**

Quiñones also challenges the District Court's application of the sentencing guidelines. According to Quiñones, the sentencing guidelines expressly recommend that a district court impose concurrent -- not consecutive -- sentences where a

---

[3] Nor do we find error in the District Judge's admission that, before sentencing, he discussed Quiñones's case with his law clerk. Although ex parte contact between a law clerk and members of a jury may constitute reversible error, <u>Standard Alliance Indus., Inc.</u> v. <u>Black Clawson Co.</u>, 587 F.2d 813, 828-29 (6th Cir. 1978), a judge clearly does not transgress any lawful bounds by privately discussing cases with his chambers staff.

defendant is convicted of multiple offenses that are "grouped" under the guidelines. See U.S.S.G. § 5G1.2. Quiñones contends that because his two pleaded-to offenses were "grouped" offenses under U.S.S.G. § 3D1.2(d), the District Court erred in failing to "specifically address[] the Guidelines' recommendation for a concurrent sentence for the grouped offenses." See Gall v. United States, 552 U.S. 38 (2007).

But the District Court was presented with this argument at the sentencing hearing, and, upon hearing it, seemed to accept the legal basis for it. The District Court went on, however, to explain in detail its reasons for sentencing the defendant to consecutive 60-month sentences rather than a concurrent term. The record shows that the District Court, in deciding whether to impose the sentences consecutively or concurrently, adequately "consider[ed], as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b); see Setser v. United States, 132 S. Ct. 1463, 1468 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose."). We thus reject this challenge to the District Court's application of the sentencing guidelines, as the record does not

- 11 -

support the defendant's contention that the District Court erred in failing to account for the guidelines in opting for consecutive sentences.

**B.**

The final issue the government addresses is whether the 120-month sentence the District Court imposed is substantively reasonable. It is far from clear that Quiñones himself raises this issue. But, in any event, we have no trouble concluding that the sentence imposed is a substantively reasonable one.

"The hallmarks of substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" Zapata-Vázquez, 778 F.3d at 24 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)); see also United States v. Denson, 689 F.3d 21, 27 (1st Cir. 2012) (substantive reasonableness "depends largely on whether the sentence imposed represents a defensible result supported by a plausible rationale"). In fashioning Quiñones's sentence, the District Court relied on the defendant's many past "brushes . . . with the law," the heightened dangerousness posed by automatic weapons of the sort Quiñones had admitted possessing, and the seriousness of firearm offenses in Puerto Rico. The District Court also specifically found that there was no basis in the record to find that the defendant suffered

from any mental disorder that would mitigate the seriousness of his offenses. And the District Court further addressed each of the sentencing factors set forth in 18 U.S.C. § 3553(a) directly. The District Court thus provided more than a plausible sentencing rationale for the 120-month sentence, which on these facts is a defensible result. We accordingly reject this claimed error -- to the extent it is made at all -- as well.

## IV.

The prosecution did not breach its plea agreements with Quiñones, and the sentence the District Court imposed was neither procedurally nor substantively unreasonable. As a consequence, we affirm.