LIPEZ, Circuit Judge,
dissenting.
My colleagues all but acknowledge that the district court erred by relying on appellant Héctor Cortés-Medina’s bare record of dismissed and acquitted charges to support ■ a sentence nearly four years longer than the government recommended. Despite their indirect language, the. message of the majority opinion is unmistakable: district courts may not factor unproven charges into their • sentencing decisions without finding, by a preponder-ancfe of the evidence, that the conduct underlying those charges took place.
The majority nonetheless refuses to vacate Cortés-Medina’s sentence, relying on the plain error doctrine. Their reasoning is flawed. Not only is the plain error standard inapplicable on the facts of this case, but my colleagues also fail to acknowledge that precedent from both the *574 Supreme - Court and our ' own court long ago established that mere allegations of criminal behavior may not be used in sentencing. Hence, the district court’s error here was.plain. Moreover, the majority’s decision to leave Cortés-Medina’s sentence intact is at odds with the spirit and message of the Supreme Court’s recent decision on plain error in sentencing. See Molina-Martinez v. United States, — U.S. —, — - —, 136 S.Ct. 1338, 194 L.Ed.2d 444 (2016). Briefly stated, both the law and fairness entitle Cortés-Medina to a resentencing in which the unsubstantiated charges play no role.
I. Standard of Review
My colleagues apply the plain error standard of review because Cortés-Medina did not object to the portion of his presen-tence investigation report (“PSR”) listing charges against him that either were dismissed or resulted in acquittal.[8] I disagree that Cortés-Medina’s challenge to the court’s use of these - unsubstantiated -.charges was unpreserved,. Certainly, Cortés-Medina was not required to object to the inclusion óf these -charges.- in his PSR, as he has not argued that the arrests and subsequent proceedings did not occur, He did, however, point out in his sentencing memorandum the flimsy foundation for many of the charges.[9] Referring to his multiple indictments in state court, he noted that “many of the indictments got dismissed becau.se of lack of proof related to the supposed direct participation of the defendant and in others there [was] no proof at all.” He further stated that “many of these accusation[s] were dismissed because of insufficient evidence.” Although Cortés-Medina did not repeat his objection in the argument section of his memorandum, or explicitly assert that the court should not take his dismissed and acquitted charges into account, that objection and assertion are implicit in his contentions that the charges lack support.[10]
*575 Moreover, even if plain error review applies, Cortés-Medina would satisfy its requirements. The four elements of the plain error test are: (1) an error that was (2) clear or obvious, which both (3) affected the defendant’s substantial rights and'(4) “seriously impaired the fairness,' integrity, or public reputation of judicial proceedings.” United States v. Ramos-González, 775 F.3d 483, 499 (1st Cir.2015) (quoting United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir.2013)). As I elaborate below, the prohibition against relying on unsubstantiated allegations of culpable conduct to justify a longer sentence has long roots in precedent. Hence; absent evidence sufficient to meet the modest preponderance-of-the-evidence standard, ■ a court’s use of unproven charges in sentencing is error that must be characterized as “clear or obvious.” Moreover, the district court invoked such charges when selecting the high end of the applicable-Guidelines range, despite the Probation Office’s inability to explain the underlying conduct or give reasons for the dismissals. The error was thus manifestly prejudicial; As for the miscarriage-of-justice prong, we previously have recognized that “the difference in potential jail time would be á concern in any balance.” United States v. Ramos-González, 775 F.3d 483, 507 (1st Cir.2015) (quoting United States v. Torres-Rosario, 658 F.3d 110, 117 (1st Cir.2011)).
-The Supreme Court’s recent decision in Molindr-Martinez further supports the conclusion that this error- would satisfy what the majority describes as “not [an] appellant-friendly” standard. In Molinar-Martinez, the Court rejected the .Fifth Circuit’s, “rigid” rule that made it harder for a defendant who belatedly identifies a Guidelines error, and whose sentence is nonetheless within the correct Guidelines range, to show prejudice under the plain error .standard. Molina-Martinez, — U.S. at —, 136 S.Ct. 1338. While Molina-Martinez involved an incorrect Guidelines range, and the focus here is on the district court’s selection of an appropriate, sentence within an undisputed range, the Court’s realistic assessment of the burdens of the plain error standard is equally applicable. It is not as if a more “appellant-friendly” approach to plain error in sentencing would impose undue costs' on the courts. As the Court in Molinar-Martinez observed, “even when a Court of Appeals does decide that resentencing is appropriate, ‘a remand for resentencing while not costless, does not invoke the same difficulties as a remand for retrial does,’ ” id. at —, 136 S.Ct. 1338 (quoting United States v. Wernick, 691 F.3d 108, 117-118 *576 (2d Cir.2012), and United States v. Sabillon-Umana, 772 F.3d 1328, 1334 (10th Cir.2014) (stating that the “cost of correction is ... small” because “[a] remand for sentencing ... doesn’t require that a defendant be released or retried”)).
Molina-Martinez thus rejects the misguided, court-centric obsession with the finality of sentences in favor of a practical view of the balance of interests when a court confronts the belated claim of a criminal defendant whose sentence was flawed. Given the modest impact of a resentencing on the judicial system, we should not lightly deny that remedy to a defendant whose term of incarceration appears to have been erroneously lengthened. Yet, the majority gives only glancing attention to the obvious error, and the resulting unfairness, in the sentence imposed on Cortés-Mediná.[11] On the record before us, even under the plain error standard, Cortés-Medina should prevail on his claim of procedural error.
II. The Plainness of the Preponderance Standard
My colleagues write that the Supreme Court “might well hold that a sentencing court may not accord any significance to a record of multiple arrests and charges without convictions unless there is adequate proof of the conduct upon which the arrests or charges were predicated.” Even as qualified, this observation — anchored in the Supreme Court’s nearly two-decades-old decision in United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) — effectively recognizes the long heritage of the principle that criminal charges may not play a role in sentencing without proof that the underlying conduct, in fact, occurred. Nonetheless, the majority depicts the district court’s error as not “plain” in light of dicta in our court’s caselaw.
The majority is wrong in suggesting that the governing law was equivocal at the time of Cortés-Medina’s sentencing. As described below, both Watts and our own precedent make clear that the focus must be on the defendant’s actual conduct, not on mere allegations of criminal activity unsupported by any facts. Indeed, this is commonsense. Even- a series of arrests does not prove culpability if none of the charges .bore fruit and the court has no information about what triggered the arrests. Sometimes, systemic flaws lead to arrests without justification. See United States v. Zapete-Garcia, 447 F.3d 57, 61 (1st Cir.2006) (noting that “arrest ‘happens to the innocent as well as the guilty”’ (quoting Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948))); see also, e.g., United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir.2012) (“We have cautioned against district courts relying on mere arrests as indicative of a defendant’s character ... since a criminal charge alone does not equate with criminal guilt of the charged conduct.”). Hence, a court imposing incarceration for a later crime cannot simply presume that *577 past charges resolved without conviction, even if there were many of them, are attributable to flawed or lax prosecutorial or judicial systems rather than the defendant’s innocence.
Nor was there any doubt at the time of Cortés-Medina’s sentencing in December 2013 as to the standard of reliability applicable to the consideration of uncharged, dismissed or acquitted criminal activity. The need for proof by at least a preponderance of the evidence had been , plainly articulated in.both Supreme Court and First Circuit caselaw well before that date.
A. The Teaching of Watts
In Watts, the Supreme Court rejected an argument that principles of due process foreclose reliance on acquitted conduct to calculate the Guidelines range, stating that “a jury’s verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” 519 U.S. at 157, 117 S.Ct. 633 (emphasis added). In so stating, the Court reaffirmed its prior holding that “application of the preponderance standard at sentencing generally satisfies due process.” Id. at 156, 117 S.Ct. 633 (citing McMillan v. Pennsylvania, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).
Although the- focus in Watts was on the use of acquitted conduct to set the Guidelines range, the Court did not suggest that a standard less demanding than prepo'n-derance-of-the-evidence applies to thé'use of acquitted conduct — or any-other unproven criminal activity — in choosing a sentence within the range.[12] To the contrary, multiple statements in the Watts opinions reflect an assumption that any facts used in sentencing — pertaining to allegations of past criminal conduct, or otherwise — must be proven by a preponderance of the evidence or an even higher standard of reliability. First, the Court quotes commentary from Guidelines § 6A1.3 stating that “it is ‘appropriate’ that facts relévant to sentencing be proved by a preponderance of the evidence,” 519 U.S. at 156, 117 S.Ct. 633 and the majority goes on to make the observation quoted above linking the preponderance standard with the requirements of due process. Id.[13] In addition, as quoted above, the Court framed its holding in Watts broadly, without any suggestion that the preponderance standard applies only for the purpose of selecting the Guidelines range: a sentencing court is permitted, in general, to consider “conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” Id. at 157, 117 S.Ct. 633.
*578 Second, Justice. Scalia points out that the preponderance of the evidence standard — the measure of reliability the Court has endorsed for other sentencing facts— is also consistent with due process for conduct underlying an acquittal. He asserts that neither the Sentencing Commission nor the courts may entirely exclude from the sentencing calculus “information which would otherwise justify enhancement of sentence or upward departure,” or impose “some higher standard of probative worth .than the Constitution and laws require,” simply because that information “pertains to acquitted conduct.” See id. at 158, 117 S.Ct. 633 (Scalia, J., concurring).[14]
Third, and consistently, the Watts Court acknowledged the possibility that, in some circumstances, the more demanding clear- and-convincing evidence standard might be appropriate. Id. at 156-57, 117 S.Ct. 633, In a lengthy footnote citing cases reflecting “a divergence of opinion among the Circuits,” id. at 156, 117 S.Ct. 633 the Court quotes an Eighth Circuit case characterizing the Supreme Court’s McMillan decision as approving the preponderance standard only “‘for garden variety sentencing determinations,’” id. at 156 n. 2, 117 S.Ct. 633 (quoting United States v. Townley, 929 F.2d 365, 369 (8th Cir.1991)). In other words, the Court in Watts considered the possibility that, at times, an assessment more reliable than the preponderance standard might be applicable to sentencing facts. Neither the Court nor the circuits it quoted in Watts contemplated the possibility of proof less reliable than preponderance of the evidence. ■ This view that Watts reaffirms preponderance of the evidence as the minimum standard of reliability is also reflected in academic literature. See, e.g., Claire McKusker Murray, Hard Cases Make Good Law: The Intellectual History of Prior Acquittal Sentencing, 84 St. John’s L. Rev. 1415, 1468 (2010) (“Under Watts, prior acquittal sentencing is pérmitted but not mandated, and a hard floor of reliability is established in the form of the requirement that prior acquitted conduct be proved to a preponderance of the evidence.”).
Watts was thus not merely a harbinger of a reliability requirement for considering, in the majority’s words, “a record of multiple arrests and charges-without convictions.” Maj. Op. Rather, Watts applied a well-established minimum standard in a context — a jury verdict of acquittal— where the competing argument was that such charges should not be considered at ah.
B. First Circuit Law
The preponderance-of-the-evidence baseline for considering sentencing facts has also long been established in our circuit. Indeed, two decades ago, we applied the standard in this very context, i.e., to the choice of sentence within the Guidelines range where the court sought to rely on unproven criminal conduct. See United States v. Lombard, 102 F.3d 1, 4 (1st Cir.1996) (“[T]he district court may ... choose to give weight to the uncharged offenses in fixing the sentence within the statutory range if it finds by a preponderance of evidence that they occurred ____”); see also United States v. Munyenyezi, 781 F.3d 532, 544 (1st Cir.2015) (“[A] judge can find facts for sentencing purposes by a preponderance of the evidence, so long as those facts do. not affect either the statutory minimum or the statutory maximum .... ” (citations omitted)); United States v. Fermin, 771 F.3d. 71, 82 (1st *579 Cir.2014) (“While the jury must, of course, find facts beyond a reasonable doubt,, a preponderanee-of-the-evidence standard applies to the sentencing court’s factual findings.”); United States v. Gobbi, 471 F.3d 302, 314 (1st Cir.2006) (stating that “acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement”).
I recognize that, despite this well-established standard of reliability, we have not always used the words “preponderance of the evidence” when considering a district court’s reliance on charges that did not lead to conviction. See, e.g., United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir.2013); United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir.2012); Zapete-Garcia, 447 F.3d at 61. Nonetheless, we have applied that standard even when we have not referred to it by “name,” routinely scrutinizing the facts underlying the unproven criminal charges to ensure the necessary degree of reliability. See, e.g., United States v. Hinkley, 803 F.3d 85, 93 (1st Cir.2015) (upholding court’s reliance on reports of inappropriate sexual contact with minors where district court “found that it was reasonable to rely on the experience of the detective, who prepared the police reports” and where “certain details reported by [a victim] made the reports ‘almost self-authenticating’ ”); United States v. Díaz-Arroyo, 797 F.3d 125, 127, 130 n. 3 (1st Cir.2015) (noting prosecutor’s explanation that charges for murder and attempted murder were dropped “only after the sole surviving witness to the incident (a minor who was able positively to identify the defendant as the shooter) was threatened and fled the jurisdiction,” and, that defense counsel “did not directly challenge the prosecutor’s account of the circumstances surrounding the dismissal of the charges”); Flores-Machicote, 706 F.3d at 21 (noting that the district court “went to considerable lengths to walk through the defendant’s prior interactions with the law .[and] explained, in some detail, why [it] believed the outcome of these interactions underrepresented the seriousness of the defendant’s past criminal conduct”); Gallardo-Ortiz, 666 F.3d at 814-15 (noting that the district court took into account, inter alia, that numerous charges were dismissed on speedy trial grounds (i.e., not the merits), and rejecting defendant’s contention that the court relied on “the dismissed charges when concluding that he displayed a violent character”); United States v. Tabares, 951 F.2d 405, 411 (1st Cir.1991) (noting that some charges were dismissed “not because of any finding on the merits of the case,” but because the defendant was deported, and that defendant did not “deny the facts, as set forth in the presentence report, upon which these charges rested”).
C. Applying the Standard
Given the precedent described above, this should be an easy case for concluding that á remand is necessary because, as the majority concedes, the Probation Office was unable to obtain any information about the conduct underlying the unproven or acquitted charges reported in Cortés-Med-ina’s PSR. The district court thus had no evidence that those charges in fact reflected criminal behavior. At the sentencing'hearing, after listing the charges and noting the absence of explanation for the dismissals, the court merely voiced its “firm belie[f] that lightning doesn’t strike twice in the same place.” Presumably, the court meant to offer a different metaphor — “where there’s smoke, there’s fire” — to say that the unproven charges had substance because Cortés-Medina had other, similar criminal convictions and also admitted participating in the drug conspiracy charged in this case.
*580 The majority concludes that this handling of Cortés-Medina’s criminal history is not plain error because of what they admit is dicta in our precedent “positing that a series of arrests” — as distinguished from a single arrest — “ ‘might legitimately suggest a pattern of unlawful! behavior even in the: absence of any convictions.’ ” See supra (citing Lozada-Aponte, 689 F.3d at 792 (quoting Zapete-Garcia, 447 F.3d at 61)), However, as the label “dicta” reflects, the cases they cite do not support the proposition that a court may rely on multiple unproven charges in circumstances where, as here, there is no proof of the defendant’s underlying conduct. In the cited cases, the courts considered evidence of the conduct. See United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir.2013) (indicating that the defendant’s PSR contained detail on the events giving rise to the dismissed charges and noting that the defendant did not object to “any aspect” of the discussion); Lozada-Aponte, 689 F.3d at 792 (referring to “Lozada’s frequent run-ins ■with law enforcement in Florida, Illinois, and Puerto Rico, some of which apparently involved firearms”).[15] Moreover, we cannot allow incorrect, speculative dicta to override standards that are otherwise clearly articulated by the Supreme Court and our own precedent.
Cortés-Medina’s PSR contains an unela-borated list of his dismissed and acquitted charges, with notations stating that “Court documents were requested but have. not been received.” The PSR states that some of the charges were dismissed for lack of probable cause, while others are simply described as “dismissed.” The court thus had no basis — let alone a preponderance of the evidence — to find that the “smoke” represented by the unproven charges signified “fire.” When additional years of incarceration are in the balance, due process requires more than metaphors. The district court thus erred— plainly — by relying on those charges to sentence Cortés-Medina to a'longer term of imprisonment than it otherwise would have imposed.
III. Conclusion
• It has been established for decades that a district court may not rely on allegations of a defendant’s past criminal activity to increase his sentence for a later crime. Instead, if the court wishes to consider that alleged conduct at sentencing, it must determine, by a preponderance of the evidence, that the prior criminal conduct occurred. This requirement applies equally to a single instance of prior criminal activity and to a series of alleged crimes. Invocation of a pattern does not eliminate the need to examine each unproven criminal charge under the preponderance of the evidence standard.
In this case, the majority concedes that no factual support was offered to substantiate the charges on which the district court relied. The Probation Office has also acknowledged that it tried, but failed, to obtain the supporting information. Hence, on this record, defendant Cortés-Medina is entitled to resentencing without reliance on the dismissed and acquitted charges. As the Supreme Court has now highlighted in rejecting a “rigid” approach to plain error in sentencing, “the cost of correction is .., small,” Molina-Martinez, — U.S. at —, 136 S.Ct. 1338 (internal quotation marks omitted), and any concern about the burden of additional proceedings is therefore unfounded. I respectfully dis *581 sent from my colleagues’ conclusion to the contrary.

. The reference here to "dismissed” charges also encompasses references by the district court and the majority to arrests that may not have led to formal charges.

. In addition to four prior convictions, Cortés-Medina’s PSR lists one acquittal and multiple arrests for charges that were subsequently dismissed.

. Cortés-Medina did not object to use of his unsubstantiated criminal history after sentence was imposed, but the obligation to reiterate an argument at that point is uncertain. See United States v. Gallant, 306 F.3d 1181, 1189 (1st Cir.2002)("[T]here is no Federal Rule of Criminal Procedure giving advance . notice to .counsel of a requirement to make post-sentence objections.”). - Indeed, we have recognized the risk that a defendant might irritate the district 'court by resuming argument after the sentence is imposed. Id. at 1188-89 (observing that "few trial judges would warm to a rule which requires continued argument after the court gives its sentence”). ,
To eliminate that risk — and thereby diminish uncertainty on appeal concerning the appropriate standard of review — I urge our court to follow the lead of other circuits and adopt a prophylactic rule requiring sentencing judges to expressly ask the parties for objections after the sentence is announced.
The Sixth Circuit, for example, has adopted such a rule pursuant to its supervisory power over district courts within its jurisdiction. The rule directs sentencing judges,
after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal.... Providing á final opportunity for objections after the pronouncement of sentence, "will serve the dual purpose[s] of permitting the district court to correct on the spot :any error it may have made and of guiding appellate review.”
United States v. Bostic, 371 F.3d 865, 872 (6th Cir.2004) (footnote omitted) (quoting United *575 States v. Jones, 899 F.2d 1097, 1102 (11th Cir.1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (1993)). The Sixth Circuit’s rule is itself derived from a similar requirement in the Eleventh Circuit. See Jones, 899 F.2d at 1102 (instructing district courts “to elicit fully articulated objections, following imposition of sentence, to the court’s ultimate findings of fact and conclusions of law”); id. at 1102-03 (stating that "[cjlear articulation” from defense counsel -will "tell the appellate court precisely which objections have been preserved and which have been waived, and enable the appellate court to apply the proper standard of review to those preserved”).
The válue of such a rule is illustrated by this case, where the requirement would have avoided, or at least minimized, the confusing jumble of standards deemed applicable by the majority; (1) plain error for the claim that the district court' improperly considered acquitted and dismissed charges; (2) abuse of discretion for the claim that the court failed to adequately consider the factors set forth in 18 U.S.C. § 3553(a); (3) plain error for the claim that the court failed to provide an adequate explanation of the chosen term of imprisonment; and (4) an uncertain standard of review for the defendant’s challenge to the substantive, reasonableness of his sentence (leading the majority to apply abuse of discre.tion).

. Moreover, despite cautioning district courts against placing weight on a series of unproven charges, the majority elsewhere in its opinion suggests that the court's reliance on such charges in this case was acceptable. In rejecting appellant’s separate argument that’the court did not provide an adequate explanation for imposing a top-of-the-range sentence, my colleagues note that the court “could well have believed, even absent facts about the underlying conduct,” that Cortés-Medina’s “pattern of arrests and the persistent lack of follow-up” “spoke directly to the character of the individual, the risk of recidivism, and the need to protect the public from future crimes.” This implicit endorsement of the district court’s now-discredited reasoning further reflects the majority’s inattention to fairness in this case.

. Notably, the issue debated by the majority and dissent in Watts was not whether a lésser standard should apply, but whether acquitted conduct should be a factor at all in calculating the Guidelines range. In his dissent, Justice Stevens conceded that the Guidelines permit the use of acquitted conduct in selecting the particular sentence within a range, but argued that acquitted conduct should be entirely excluded from consideration in setting the range. See 519 U.S. at 162, 166, 117 S.Ct. 633 (Stevens, J., dissenting).

. Section 6A1.3(a) of the Guidelines states, in part:
In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.
The commentary invoked by the Court states: "The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.” See 519 U.S. at 156, 117 S.Ct. 633 (citing § 6A1.3 cmt,).

; Although Justice Scalia does not refer expressly to the preponderance standard, he implicitly accepts the lead opinion's affirmation of McMillan and the Court's long-held view that preponderance of the evidence is the constitutional baseline.

. In the third case, Zapete-Garcia, the panel rejected reliance on a single arrést that occurred more than a decade earlier, speculating that it might view ‘‘a series of past arrests” differently. 447 F.3d at 60-61.