# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 19, 2022       Decided May 9, 2023

No. 21-1218

OMAR AHMED KHADR,
PETITIONER

v.

UNITED STATES,
RESPONDENT

---

On Petition for Review of an Order
of the U.S. Court of Military Commission Review

---

*Samuel T. Morison*, Attorney, Office of Military Commissions, argued the cause for petitioner. With him on the briefs was *Alexandra Link*, Attorney.

*Danielle S. Tarin*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Matthew G. Olsen*, Assistant Attorney General for National Security, and *Joseph F. Palmer*, Attorney.

Before: HENDERSON and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

Dissenting opinion filed by *Circuit Judge* WILKINS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Omar Ahmed Khadr is a former Guantanamo Bay detainee. He asks us to vacate his convictions for war crimes—including providing material support to terrorism and murder of a United States soldier in violation of the law of war—based on the alleged constitutional and statutory infirmities of those convictions. We dismiss the petition because Khadr waived his right to appellate review by this Court.

## I.

The Military Commissions Act (MCA) provides that a military commission "may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose." 10 U.S.C. § 948h. The official, usually referred to as the "convening authority," details the commission's members, refers charges to the commission and reviews any conviction and sentence imposed by the commission. *Id.* §§ 948i, 950b; R.M.C. 601. On review of a final conviction and sentence, the convening authority may dismiss any charge, convict the accused of a lesser included offense or approve, disapprove, suspend or commute the sentence the commission imposed. *Id.* § 950b(c). The convening authority's decision to approve, disapprove or modify the commission's findings or sentence is the convening authority's "action." *Id.*

In every case in which the convening authority approves a commission decision that includes a finding of guilty, "the convening authority shall refer the case to the United States Court of Military Commission Review [CMCR]," a military appellate court. *Id.* § 950c(a); *see also In re al-Nashiri*, 791 F.3d 71, 74–75 (D.C. Cir. 2015). "[I]n each case that is referred," the CMCR "shall . . . review the record . . . with respect to any matter properly raised by the accused," 10 U.S.C. § 950f(c), and "affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact," *id.* § 950f(d).

We have exclusive jurisdiction to determine the validity of any final judgment rendered by a military commission and, where applicable, affirmed or set aside as incorrect in law by the CMCR. *Id.* § 950g(a); *see also id.* § 950c(b) (permitting accused to waive review in the CMCR).

## II.

Khadr is a Canadian citizen and the son of Ahmad Khadr, a former senior member of al Qaeda. In 2002, when Khadr was 15 years old, he joined an al Qaeda cell in Afghanistan that constructed and planted improvised explosive devices targeting U.S. forces. Khadr and his cell also clandestinely observed the movements of U.S. military convoys and conveyed the information to other al Qaeda operatives.

On July 27, 2002 U.S. forces raided the compound where Khadr and other al Qaeda operatives were located. In the ensuing firefight, Khadr threw a hand grenade and killed an American soldier, Sergeant First Class Christopher Speer. Another American solider then engaged Khadr and shot him twice. Khadr was taken into U.S. military custody, given medical treatment and transferred to the Naval Base at Guantanamo Bay for detention.

In 2007, Khadr was charged under the MCA with murder and attempted murder in violation of the law of war, conspiracy, providing material support to terrorism and spying. In October 2010, Khadr entered into a pretrial agreement (PTA) with the convening authority. Khadr agreed, among other things, to plead guilty to all five charges and to waive his appeal rights. In the pertinent portion of the PTA, Khadr "offer[ed] and agree[d]" to

> [s]ign and execute the document found at Attachment B, a two (2) page document that is Military Commission Form 2330, Waiver/Withdrawal of Appellate Rights, within the specified timeframe found within Attachment Band R.M.C. 1110. In doing so I understand I will, at the time of execution of Attachment B, waive my rights to appeal this conviction, sentence, and/or detention to the extent permitted by law, or to collaterally attack my conviction, sentence, and/or detention in any judicial forum (found in the United States or otherwise) or proceeding, on any grounds, except that I may bring a post-conviction claim if any sentence is imposed in excess of the statutory maximum sentence or in violation of the sentencing limitation provisions contained in this agreement. I have been informed by my counsel orally and in writing of my post-trial and appellate rights.

App. 59–60.

In exchange, the convening authority agreed not to approve any sentence in excess of eight years' confinement and to support Khadr's request for a transfer to Canadian custody.

On October 30, 2010 Khadr and his counsel executed Form 2330. The executed form stated, in relevant part:

> I understand that . . . [i]f I waive or withdraw appellate review –
>
> a. My case will not be reviewed by the Court of Military Commission Review, or be subject to further review by the Court of Appeals for the District of Columbia Circuit, or by the Supreme Court.
>
> . . . .
>
> c. A waiver or withdrawal, once filed, cannot be revoked, and bars further appellate review.
>
> Understanding the foregoing, I waive my rights to appellate review. I make this decision freely and voluntarily.

App. 71. Khadr's counsel filed the executed form with the commission and thus made it part of the "record of trial." *See* R.M.C. 808, 1103.

The following day, October 31, 2010, the military commission sentenced Khadr to 40 years' confinement. At the sentencing hearing, the military judge reviewed with Khadr the terms of his appeal waiver and confirmed in a colloquy that the waiver was both knowing and voluntary.

In May 2011 the convening authority issued an action approving "only so much of the sentence as provides for eight years confinement." App. 82. The approval action was served on Khadr's counsel that same day. Despite his agreement to do

so in the PTA, Khadr did not refile his appeal waiver after the convening authority took action.

In September 2012, based in part on the convening authority's support, Khadr was transferred to Canada to serve the remainder of his sentence. The Queen's Bench of Alberta ordered Khadr released on bail in 2015 and determined in 2019 that his sentence had expired. *Khadr v. Bowden Inst.* (2015), 590 A.R. 359 (Can. Alta. Q.B.); *Khadr v. Warden of Bowden Inst.*, 2015 ABQB 207 (Can. Alta. Q.B.). Khadr has been released without conditions.

Although the convening authority approved the commission's finding of guilty, he did not refer Khadr's case to the CMCR for review pursuant to 10 U.S.C. § 950c. Instead, Khadr tried to initiate review himself in 2013—two years after the convening authority's action—by filing a brief with the CMCR challenging his convictions. Khadr argued, *inter alia*, that the military commission lacked jurisdiction of the offenses to which he pleaded guilty. The CMCR held the appeal in abeyance pending our resolution of a series of related appeals. *See Al Bahlul v. United States (Al Bahlul I)*, 767 F.3d 1 (D.C. Cir. 2014) (en banc); *Al Bahlul v. United States (Al Bahlul II)*, 792 F.3d 1 (D.C. Cir. 2015), *rev'd en banc sub nom. Bahlul v. United States (Al Bahlul III)*, 840 F.3d 757 (D.C. Cir. 2016); *Al Bahlul v. United States (Al Bahlul IV)*, 967 F.3d 858 (D.C. Cir. 2020).

After *Al Bahlul IV* was decided, the CMCR lifted the abeyance, denied all pending motions without prejudice and ordered the parties to file supplemental briefs addressing the court's jurisdiction and the merits of Khadr's appeal. On October 21, 2021 the CMCR dismissed the appeal for lack of subject-matter jurisdiction, concluding that "until a case is referred to our court by the convening authority under section

950c . . . we lack jurisdiction to review it on the merits." *United States v. Khadr*, 568 F. Supp. 3d 1266, 1271 (C.M.C.R. 2021) (cleaned up). The court remanded the case to the convening authority with the following instructions:

> Khadr, if he elects, may ask the convening authority to refer his case to this court. The government, if it elects, has the right to state its position in response. We caution the parties that they should attend to this matter diligently.
>
> We do not presume to tell the convening authority what he should do. We do say that within forty-five (45) days of the date of this opinion the convening authority should resolve the referral matter. If it is not resolved by then, and Khadr can show . . . that (i) he has acted diligently on remand, including making a proper request seeking a referral, and (ii) the convening authority has refused his request, in fact or constructively, then we will entertain a petition for a writ of mandamus. In the event Khadr seeks a writ, we express no view on whether the mandamus requirements could or might be satisfied.

*Id.* at 1277.

On remand, the convening authority declined to refer Khadr's case to the CMCR, concluding that Khadr's appellate waiver was binding notwithstanding it was made before the convening authority took action.

Khadr petitioned this Court for review of the CMCR's dismissal for lack of subject-matter jurisdiction.

8

## III.

## A.

Khadr argues his convictions should be set aside for six reasons. He first argues that the military commission lacked jurisdiction of offenses that he committed as a juvenile. Second, he claims the Ex Post Facto Clause bars his convictions because the offenses of which he was convicted were not crimes triable by military commission at the time of his conduct in 2002. Third, he argues that, by authorizing the military commission to convict him of "purely domestic crimes" not cognizable under international law, the Congress exceeded its constitutional authority under Article I's Define and Punish Clause and violated Article III's Judicial Power Clause. Fourth, he argues the "specifications" of murder, attempted murder and conspiracy failed to state an offense under the MCA because they did not allege that Khadr engaged in conduct that could render his crimes "violations of the law of war." Fifth, he claims that the MCA discriminates against aliens in violation of the equal protection component of the Due Process Clause. And finally, he contends his guilty plea was unknowing and involuntary and that it lacked a factual basis.

The Government argues that we lack subject-matter jurisdiction of Khadr's petition because Khadr did not satisfy the MCA's exhaustion requirement, 10 U.S.C. § 950g(b), and because Khadr does not petition for review of a "final judgment of a military commission" as "affirmed or set aside as incorrect in law" by the CMCR, *id.* § 950g(a). We do not reach the Government's jurisdictional arguments, however, because

Khadr's petition is fatally infirm on another threshold ground: waiver.[1]

*Steel Company v. Citizens for a Better Environment* established a rule of priority dictating the sequence in which a federal court must decide the different issues that a case presents. 523 U.S. 83, 93–102 (1998). But "*Steel Co.*'s rule of priority does not invariably require considering a jurisdictional question before *any* nonjurisdictional issue. Rather, courts may address certain nonjurisdictional, threshold issues before examining jurisdictional questions." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 513 (D.C. Cir. 2018). A court therefore need not consider its subject-matter jurisdiction if it can dispose of the case on another non-merits ground. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (assuming Article III standing and dismissing case on prudential standing ground); *Steel Co.*, 523 U.S. at 100 n.3 (approving case resolving *Younger* abstention question before addressing subject-matter jurisdiction).

---

[1] The dissent faults us for addressing the validity of Khadr's appeal waiver without first giving the CMCR the chance to do so. *See* Dissenting Op. at 1–2, 5 n.1. The question before us, however, is whether Khadr waived his right to appellate review by this Court, not whether he waived his right to review by the CMCR. Those are distinct questions, especially given that the MCA imposes special limitations on an accused's ability to waive CMCR review. *See, e.g.*, 10 U.S.C. § 950c(b)(3) (accused must waive CMCR review within 10 days after convening authority's action). Even if the CMCR were to address the validity of Khadr's appeal waiver, it would consider only whether Khadr properly waived its review, not ours.

10

Whether a defendant waived his appellate rights is a non-jurisdictional, non-merits threshold issue. *United States v. Hunt*, 843 F.3d 1022, 1026 n.1 (D.C. Cir. 2016). A dismissal based on an appeal waiver is a determination that the merits may not be reached because the defendant knowingly and voluntarily gave up his right to an appellate court's consideration of the merits of his case. Although resolving a case on waiver "may . . . involve a brush with 'factual and legal issues of the underlying dispute,'" *Sinochem*, 549 U.S. at 433 (quoting *Van Cauwenberghe v. Baird*, 486 U.S. 517, 529 (1988)), that brush does not transform the decision into a merits determination because deciding the waiver issue "does not entail any assumption by the court of substantive 'law-declaring power,'" *id.* (quoting *Ruhrgas*, 526 U.S. at 584–85). We may therefore decide whether Khadr waived his right to appeal without first considering whether we have subject-matter jurisdiction. *See id.* at 431 ("[J]urisdiction is vital only if the court proposes to issue a judgment on the merits." (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006))).

**B.**

We generally may enforce a knowing, intelligent and voluntary waiver of the right to appeal. *Hunt*, 843 F.3d at 1027 (citing *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009)). Even an anticipatory waiver—a waiver made before the defendant knows what his sentence will be—is enforceable as long as the defendant "is aware of and understands the risks involved in his decision." *Guillen*, 561 F.3d at 529. But we will not enforce an appeal waiver that "only arguably or ambiguously forecloses [the defendant's] claims." *Hunt*, 843 F.3d at 1027. Because a plea agreement is in essence a contract, we apply contract principles in interpreting a plea agreement.

*Id.* If the agreement unambiguously covers the accused's claims, we dismiss the appeal. *Id.*

Here, Khadr agreed in the PTA to waive "my rights to appeal this conviction, sentence, and/or detention to the extent permitted by law, or to collaterally attack my conviction, sentence, and/or detention in any judicial forum (found in the United States or otherwise) or proceeding, on any grounds." App. 60. This broad waiver, which took effect "at the time of execution of Attachment B [Form 2330]," excepts only "a post-conviction claim if any sentence is imposed in excess of the statutory maximum sentence or in violation of the sentencing limitation provisions contained in this agreement." App. 60. Otherwise, the provision unambiguously waives any challenge Khadr may have made to his convictions or sentence. Khadr does not challenge the length of his sentence and all of the claims he raises on appeal therefore fall within the scope of his appeal waiver (except, of course, for any jurisdictional challenge—more on that below).

Khadr gives a number of reasons that his unambiguous appeal waiver should not be enforced. None is availing. He first contends that his waiver is unenforceable because, in the military justice system, an accused cannot waive the right to appeal until after the convening authority takes action. *Cf. United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006). Citing 10 U.S.C. § 950c(b)(3), he argues that the Congress expressly included this limitation in the MCA and that his appeal waiver is therefore unenforceable under the plain language of the statute.

10 U.S.C. § 950c(b)(3) provides: "A waiver under paragraph (1) must be filed, if at all, within 10 days after notice of the action is served on the accused or on defense counsel." Khadr reads this provision as precluding an accused from filing

an anticipatory waiver of this Court's review. By its own terms, however, the provision applies only to an accused's waiver of *CMCR* review. *See id.* § 950c(b)(1) ("Except in a case in which the sentence . . . extends to death, an accused may file with the convening authority a statement expressly waiving the right of the accused to appellate review by the United States Court of Military Commission Review under section 950f of this title."). The MCA includes no similar statement respecting waiver of *our* review. Indeed, the statute is utterly silent regarding whether, and under what conditions, an accused may waive appellate review by this Court. Given such silence, we decline Khadr's invitation to read a post-action limitation into the Act.

Khadr next argues, citing Regulation for Trial by Military Commission (R.T.M.C.) 24-2(b)(6), that an accused can never waive our appellate review. But like 10 U.S.C. § 950c(b), the Regulation discusses only waiver of appellate review by the CMCR, not by this Court. Indeed, this is evident from the Regulation's title: "Automatic Review by the United States Court of Military Commission Review." Although the Regulation states that "[t]his subsection does not apply to appeals before the United States Court of Appeals for the District of Columbia Circuit," 24-2(b)(1)(6), that language does not suggest an accused can waive review only by the CMCR and not by this Court. Rather, it merely clarifies that the procedures governing waiver of appellate review in the CMCR do not apply to us.

Khadr also contends that his claims are non-waivable and, thus, even if his waiver is enforceable, he may nevertheless raise his arguments on appeal. His claims fall into three basic categories: those challenging the constitutionality of the MCA; those alleging that certain specifications fail to state an offense; and those challenging the constitutional validity of his plea.

Khadr argues that his claims challenging the constitutionality of the MCA are non-waivable under *Class v. United States*, 138 S. Ct. 798 (2018). In Khadr's view, *Class* held that a facial constitutional challenge to a statute of conviction can never be waived. But the holding of *Class* is not so expansive. Rather, *Class* held only that a plea of guilty *on its own* does not waive a defendant's right to challenge the constitutionality of the statute of conviction. *See id.* at 803 (framing the question presented as "whether a guilty plea *by itself* bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." (emphasis added)). As we have explained:

> *Class*'s holding was relatively narrow. The Supreme Court held that a criminal defendant who pleads guilty does not necessarily waive challenges to the constitutionality of the statute under which he is convicted. The Court did not, however, hold that such claims are not waivable at all: The Court addressed only whether a guilty plea constitutes a waiver "by itself."

*Al Bahlul IV*, 967 F.3d at 875 (citations omitted); *see also United States v. Ríos-Rivera*, 913 F.3d 38, 42 (1st Cir. 2019) ("In *Class*, the Supreme Court only decided that a guilty plea alone does not waive claims that the government could not constitutionally prosecute the defendant." (cleaned up)); *Oliver v. United States*, 951 F.3d 841, 846 (7th Cir. 2020) ("*Class* held that a guilty plea, *by itself*, does not implicitly waive a defendant's right to challenge the constitutionality of his statute of conviction.").

*Class* does not preclude a defendant from *expressly* waiving his right to challenge the statute of conviction on appeal. This limitation is evident from the structure of the

opinion. The Court first considered whether Class's arguments fell within the scope of the express waivers in his plea agreement. *Class*, 138 S. Ct. at 802. It then asked whether Class's guilty plea "implicitly" waived his claims, but only after concluding that those arguments had not been expressly waived in Class's plea agreement. *See id.* at 803. Toward the end of the opinion, the Court again emphasized that Class's agreement had not waived his constitutional claims. *Id.* at 805–07. That the Court first noted that Class's arguments were not encompassed by his express waivers, and again referred to that fact at the conclusion of its opinion, strongly suggests that, although Class's plea agreement did not waive his claims, it could have. *See Al Bahlul IV*, 967 F.3d at 875 ("The Court twice emphasized that Class had not waived his objections through conduct other than his guilty plea, thus making clear that the Court was addressing only the effect of pleading guilty." (citation omitted)); *Oliver*, 951 F.3d at 846 ("[T]he Court's reasoning assumed that Class's plea agreement *could have* expressly waived such an argument but had not actually done so.").

In this case, Khadr expressly waived the right to appeal his convictions, sentence and detention. Nothing in *Class*, or other binding precedent of which we are aware, suggests that his non-jurisdictional claims, even if based on the Constitution, survive his express waiver.

Nor are we convinced the rule Khadr advocates would benefit the accused. As we explained in *Guillen*, "[a]llowing a defendant to waive the right to appeal his sentence . . . gives him an additional bargaining chip to use in negotiating a plea agreement with the Government." 561 F.3d at 530. If an appeal waiver were not enforced in the "mine run of cases," the government would cease to rely on it and the waiver would lose

its value as a bargaining chip for the defendant. *See United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015).

We note that the waiver was an especially effective bargaining chip in this case. In exchange for agreeing to waive his appellate rights, Khadr's sentence was remitted by the convening authority from 40 years' imprisonment to only 8 years' imprisonment. In addition, Khadr was transferred—on the convening authority's recommendation—to Canadian custody, where he was released on bail after serving only a portion of his sentence. There is thus good reason to believe that, had Khadr been unable to bargain with his appellate rights, he would remain in custody today.

Khadr also argues that his constitutional challenges and his challenges regarding the sufficiency of the specifications are non-waivable under Rules 905 and 907 of the Rules for Military Commissions.[2] This argument is easily dismissed as we considered and rejected the same argument in *Al Bahlul I*,

---

[2] R.M.C. 905(e) provides:
> Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under section (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver. Other motions, requests, defenses, or objections, except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the commission is adjourned for that case and, unless otherwise provided in this Manual, failure to do so shall constitute waiver.

Similarly, R.M.C. 907(b)(1), titled "Nonwaivable Grounds," provides that "[a] charge or specification shall be dismissed at any stage of the proceedings if: (A) The military commission lacks jurisdiction to try the accused for the offense; or (B) The specification fails to state an offense."

767 F.3d at 10 n.6. There, Al Bahlul argued that his convictions should be set aside because they violated the Ex Post Facto Clause. *Id.* at 8. Al Bahlul did not raise that claim before the military commission but on en banc review three of our colleagues suggested it was non-forfeitable under Rules 905 and 907 either because the claim was jurisdictional or because it amounted to an argument that the indictment failed to allege an offense. *See id.* at 48 (Rogers, J., concurring in judgment in part and dissenting); *id.* at 51 (Brown, J., concurring in judgment in part and dissenting in part); *id.* at 78–79 (Kavanaugh, J., concurring in judgment in part and dissenting in part). The en banc majority disagreed. It explained that the claim was not jurisdictional because "the question whether th[e MCA] is unconstitutional does not involve 'the courts' statutory or constitutional *power* to adjudicate the case.'" *Id.* at 10 n.6 (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The en banc court also rejected the suggestion that Al Bahlul's ex post facto claim was non-forfeitable because it alleged that the indictment failed to state an offense. "Failure to state an offense," the court explained, "is simply another way of saying there is a defect in the indictment—as evidenced by Rule 907's cross-reference to Rule 307(c), which sets forth the criteria for charges and specifications." *Id.* Supreme Court precedent is clear that "such a claim can be forfeited." *Id.*; *see Cotton*, 535 U.S. at 630 ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."); *Lamar v. United States*, 240 U.S. 60, 65 (1916) ("The objection that the indictment does not charge a crime against the United States goes only to the merits of the case."); *United States v. Delgado–Garcia*, 374 F.3d 1337, 1342–43 (D.C. Cir. 2004) ("[T]he substantive sufficiency of the indictment is a question that goes to the merits of the case.").

Our en banc *Al Bahlul I* decision controls. Khadr argues his constitutional claims are non-waivable because they are "jurisdictional." But his claims are no more jurisdictional than was Al Bahlul's ex post facto claim. Like Al Bahlul's ex post facto claim, Khadr's claims challenge only the constitutionality of the MCA, not the courts'—or commission's—power to adjudicate his case.[3] Challenges to the constitutionality of a statute are not themselves jurisdictional.[4] *See United States v.*

---

[3] Notably, although the Judicial Power Clause appears in Article III of the Constitution, the clause does not limit the power of the courts, but of the Congress. *See* U.S. CONST. art. III § 1. In particular, the clause curbs the Congress's power to transfer adjudicatory authority from Article III to non-Article III tribunals. *See CFTC v. Schor*, 478 U.S. 833, 850 (1986) (The clause "bar[s] congressional attempts to transfer jurisdiction to non-Article III tribunals." (cleaned up)). Khadr's Judicial Power Clause argument therefore does not implicate our subject-matter jurisdiction.

[4] Only one of Khadr's arguments is conceivably jurisdictional in the true sense. Khadr contends that the military commission lacked jurisdiction to convict him because of the Juvenile Delinquency Act (JDA), 18 U.S.C. §§ 5031 *et seq.* But the JDA, by its own terms, forbids criminal proceedings against juveniles only in a "court of the United States." 18 U.S.C. § 5032. Although the JDA does not define "court of the United States," definitions elsewhere in the U.S. Code cast serious doubt on whether a military commission qualifies as a court. *See, e.g.*, 28 U.S.C. § 451 ("The term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts . . . and any court created by Act of Congress the judges of which are entitled to hold office during good behavior."). Military courts have also held that the JDA does not apply to military tribunals. *See, e.g.*, *United States v. Thieman*, 33 C.M.R. 560, 561–62 (1963) ("Since it appears Congress enacted the Federal Juvenile Delinquency Act solely under its Article III powers and made no mention of persons in the military, we see no justification for extending the application of the Act to the military judicial system absent additional legislation."). Likewise, Supreme Court precedent and notable military treatises cast doubt on Khadr's

18

*Williams*, 341 U.S. 58, 66 (1951) ("Even the unconstitutionality of the statute under which the proceeding is brought does not oust a court of jurisdiction."). Indeed, if a constitutional challenge to a statute of conviction were jurisdictional, a federal court would be required to address, *sua sponte*, the constitutional validity of every statute of conviction in every criminal case it considered. *See United States v. Baucum*, 80 F.3d 539, 541 (D.C. Cir. 1996). That practice would not only consume judicial resources but also run afoul of a long line of Supreme Court decisions declining to consider constitutional claims not raised by the parties. *Id.*; *see also Mazer v. Stein*, 347 U.S. 201, 206 n.5 (1954) ("We do not reach for constitutional questions not raised by the parties."); *Al Bahlul III*, 840 F.3d at 780 (Millett, J., concurring) ("To hold otherwise would mean that 'a court would be required to raise [a Judicial Power Clause challenge] *sua sponte* each time it reviews a decision of a non-Article III tribunal,' even if the parties do not contest that issue." (quoting *Al Bahlul II*, 792 F.3d at 32 (Henderson, J., dissenting))).

Likewise, Khadr's argument that his claims challenging the sufficiency of his specifications are non-waivable is materially identical to the argument the en banc court deemed

argument. *See Ex Parte Vallandigham*, 68 U.S. (1 Wall.) 243, 253 (1864) (although a military commission has "discretion to examine, to decide and sentence," it is not "judicial . . . in the sense in which judicial power is granted to the courts of the United States"); *Ex Parte Quirin*, 317 U.S. 1, 39 (1942) ("[M]ilitary tribunals . . . are not courts in the sense of the Judiciary Article."); *Ortiz v. United States*, 138 S. Ct. 2165, 2179–80 (2018) ("[T]he commission [at issue in *Vallandigham*] lacked 'judicial character.' It was more an adjunct to a general than a real court."); W. WINTHROP, MILITARY LAW AND PRECEDENTS 49 (2d Ed. 1920) ("None of the statutes governing the jurisdiction or procedure of the 'courts of the United States' have any application to [a court-martial].").

forfeited in *Al Bahlul I*. Khadr neither points to any facts nor identifies an intervening change in the law that would support distinguishing our decision in *Al Bahlul I*.[5] *Cf. Al Bahlul IV*, 967 F.3d at 876 (declining to reconsider *Al Bahlul I* based on argument that defect in charging document deprives military court of jurisdiction).

Nevertheless, Khadr's challenge to the validity of his guilty plea is reviewable notwithstanding his appeal waiver. *See Garza v. Idaho*, 139 S. Ct. 738, 745 (2019) ("[C]ourts agree that defendants retain the right to challenge whether the waiver itself is valid and enforceable."); *Guillen*, 561 F.3d at 529 ("A defendant may waive his right to appeal his sentence as long as his decision is knowing, intelligent, and voluntary."). "An appeal waiver is knowing, intelligent, and voluntary if the defendant 'is aware of and understands the risks involved' in waiving the right to appeal." *United States v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018) (quoting *Guillen*, 561 F.3d at 529). Granted, "[a] written plea agreement in which the defendant

---

[5] Khadr contends *Al Bahlul I* is inapposite because that case involved forfeiture whereas this case involves waiver. Granted, our *Al Bahlul I* decision relied in part on the distinction between waiver and forfeiture in rejecting the argument that Rules 905 and 907 rendered Al Bahlul's ex post facto claim non-forfeitable but the decision also rejected the argument for reasons unrelated to the distinction between waiver and forfeiture. *See Al Bahlul I*, 767 F.3d at 10 n.6 ("Nor is Bahlul's *ex post facto* argument 'jurisdictional.' . . . The question whether [the MCA] is unconstitutional does not involve 'the courts' statutory or constitutional *power* to adjudicate the case.'" (quoting *Cotton*, 535 U.S. at 630)); *id.* ("Failure to state an offense is simply another way of saying there is a defect in the indictment . . . . As *Cotton* makes clear, such a claim can be forfeited."); *id.* (citing *Delgado-Garcia*, 374 F.3d at 1342–43, a case involving *waiver*, for the proposition that "[t]he question of an indictment's failure to state an offense is an issue that goes to the merits of a case").

waives the right to appeal" serves as "strong evidence that the defendant knowingly, intelligently, and voluntarily waived the right to appeal," we still examine the entire record to determine whether the plea was knowing, intelligent and voluntary. *Id.* at 507.

Here, the record shows that Khadr's plea was made knowingly, intelligently and voluntarily. The waiver language of the PTA and the Form 2330 is clear, both documents are signed by Khadr and his counsel and the military judge confirmed in a colloquy at Khadr's sentencing that he waived his appeal rights knowingly and voluntarily. *See id.* (listing factors).

Khadr argues his plea is invalid because the military judge misinformed him about the nature and constitutionality of the charges against him. In essence, Khadr claims that his plea should be set aside because the judge ruled against him on the merits of his legal claims. This argument is too clever by half. A defendant cannot challenge a plea based on an alleged error of law that was raised, rejected and then waived pursuant to the plea. Khadr, aware that the military judge had rejected his theories, nonetheless chose to plead guilty and expressly waive his right to appeal those erroneous (in his view) rulings. He cannot now have the merits of his waived claims reviewed on appeal by arguing his waiver was invalid because those claims were wrongly decided. Indeed, the basic principle behind an appeal waiver is that the defendant *gives up* his right to have an appellate court review the merits of his arguments in exchange for valuable consideration. *See Guillen*, 561 F.3d at 530 ("Allowing the defendant to waive this right . . . improves the defendant's bargaining position and increases the probability he will reach a satisfactory plea agreement with the Government.").

For the foregoing reasons, we conclude that Khadr unambiguously waived his right to challenge his conviction on appeal and did so knowingly, intelligently and voluntarily. We therefore dismiss the petition.

*So ordered*.

RANDOLPH, *Senior Circuit Judge*, concurring: I agree with Judge Henderson's opinion, but I write in the hope of clarifying once and for all exactly what the Supreme Court held in *Steel Co.* and what it did not. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). *See* Maj. Op. 9–10.

The issue in *Steel Co.*, as the opinion's author – Justice Scalia – described it, was this: must Article III jurisdiction (*e.g.*, standing) always be confirmed before a federal court may move on to decide the merits of a controversy? The Court answered yes even though a federal court may decide a controversy before determining whether statutory jurisdiction exists.[1]

*Steel Co.* thus held in the clearest possible terms that a "merits question cannot be given priority over an Article III question," and so rejected Justice Stevens' contrary opinion (*see* note 1 *supra*). 523 U.S. at 97 n.2.

A few years after *Steel Co.*, the author of that opinion, Justice Scalia, again writing for the Court majority, wrote that it was unnecessary to decide a statutory jurisdictional question because it was so clear that the plaintiffs would lose on the merits. *See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 416 n.5 (2004). In support, Justice Scalia cited, in addition to his opinion in *Steel Co.*, the Court's opinion in *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 456 (1974). The Court there held that "it is only if . . . a right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it." *Id.*

---

[1] "Justice Stevens' opinion concurring in the judgment, however, claims that the question whether [the statute] permits this cause of action is also 'jurisdictional,' and so has equivalent claim to being resolved first." *Steel Co.*, 523 U.S. at 88–89.

Our own decisions have followed suit: we have often bypassed statutory jurisdiction to decide merits issues.[2]

It is fair to ask what any of this has to do with this case. My answer is very little, which is why Judge Henderson's opinion does not dwell on it. That is, we are not asked here to decide the merits before deciding "jurisdiction," whether Article III jurisdiction, as in *Steel Co.* or statutory jurisdiction, as in *National Rail*.

As to what remains of the case, I am with Judge Henderson.

---

[2] *See, e.g.*, *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1246 (D.C. Cir. 2020); *Sherrod v. Breitbart*, 720 F.3d 932, 936 (D.C. Cir. 2013); *Lin v. United States*, 690 F. App'x 7, 9 (D.C. Cir. 2017); *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008); *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007); *Thomas v. Network Sols., Inc.*, 176 F.3d 500, 509–10 (D.C. Cir. 1999); *U.S. ex rel. Long v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 896 (D.C. Cir. 1999).

WILKINS, *Circuit Judge*, dissenting: There is but one issue directly before this Court: jurisdiction. With no final order to review on appeal, I believe the answer to whether we have jurisdiction must be no. In order to sidestep jurisdiction and dismiss the appeal on other grounds, the majority upholds Mr. Khadr's appeal waiver. It does so, however, without the complete record of the proceedings below, contrary to our precedent, and also without the benefit of a finding of the validity of the appeal waiver by the United States Court of Military Commission Review ("CMCR") or the trial judge in the first instance. Because we are not permitted to make findings about the scope or validity of an appeal waiver without the complete record, and because "we are a court of review, not of first view," *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)), I respectfully dissent.

## I.

As outlined by the majority, the Military Commissions Act ("MCA") provides that the convening authority "shall refer the case to the [CMCR]" whenever it approves a military commission decision "includ[ing] a finding of guilty[.]" 10 U.S.C. § 950c(a). The only listed exception to such automatic referral concerns waiver. And should a defendant waive the right to appeal, such waiver "must be filed, if at all, within 10 days after notice of the action is served on the accused or on defense counsel." *Id.* § 950c(b)(3). Although the MCA grants this Court exclusive jurisdiction, it does so on a limited basis. As such, our jurisdiction is triggered when asked to review final judgments rendered by "the military commission as approved by the convening authority and, where applicable, as affirmed or set aside as incorrect in law by the [CMCR]." *Id.* § 950g(a).

This limited record speaks for itself. In October 2010, Mr. Khadr entered into a pretrial agreement with the convening authority. Later that month, Mr. Khadr signed Military

2

Commission Form 2330, Waiver/Withdrawal of Appellate Rights ("Form 2330"). Although the military commission made a guilty finding, the convening authority failed to refer Mr. Khadr's case under § 950c, and Mr. Khadr never filed his appeal waiver under § 950c(b)(3). As relevant here, the CMCR dismissed Mr. Khadr's appeal on October 21, 2021, for lack of jurisdiction, finding it is authorized by statute only to "review cases that have been 'referred to the Court by the convening authority.' 10 U.S.C. § 950f(c)." *United States v. Khadr*, 568 F. Supp. 3d 1266, 1275 (C.M.C.R. 2021).

For our purposes, it is important to note that the CMCR expressly declined to resolve any issues regarding the scope or validity of Mr. Khadr's appeal waiver. *Khadr*, 568 F. Supp. 3d at 1274 n.11. Instead, the CMCR counseled Mr. Khadr to ask the convening authority to refer his case within 45 days, and should that fail, the CMCR would "entertain a petition for a writ of mandamus." *Id*. at 1277. It also found that should the convening authority refer the case, "the briefing of the merits appeal will be deemed completed." *Id.* Rather than immediately following these instructions, Mr. Khadr petitioned this Court on November 8, 2021, for review of the CMCR's decision dismissing for lack of jurisdiction.

The CMCR's decision, dismissing Mr. Khadr's case for lack of jurisdiction and remanding with instructions can hardly be characterized as "affirm[ing] or set[ting] aside as incorrect in law" a decision which is required to grant us jurisdiction under § 950g(a). For that reason, the government urges us to dismiss this appeal for lack of jurisdiction, because the CMCR remand order before us is not a "final order," as we have squarely held. *See Khadr v. United States*, 529 F.3d 1112, 1115–16 (D.C. Cir. 2008) (dismissing appeal for lack of jurisdiction after holding that CMCR remand order was not a final order).

3

## II.

The majority rejects this straightforward approach. Instead, the majority reasons that unlike subject matter jurisdiction, we need not satisfy ourselves that we have statutory jurisdiction as a threshold matter in every instance, so we can dismiss the appeal on a non-merits ground, like waiver. Maj. Op. 8–10. While the majority's approach is correct in theory, *see United States v. Shemirani*, 802 F.3d 1, 3 & n.1 (D.C. Cir. 2015), it is not appropriate to decide whether Mr. Khadr waived his right to appeal in this instance.

Mr. Khadr's guilty plea was taken in open court on October 25, 2010. Oral Arg. Tr. 20. However, the appeal waiver was not executed until five days later, on October 30, 2010. *Id*. at 20–21; App. 71. The transcript of October 25 is in the record before us, but not the transcript from any proceedings on October 30. The trial judge said on October 25 that he would review the appeal waiver with the defendant later, but we do not have transcripts to determine whether that ever occurred, and if so, what was said by the judge, counsel, or Mr. Khadr. Granted, the military commission made a cursory statement to Mr. Khadr on October 25, asking him if he understood that he was waiving his right to appeal. App. 304–05. But we do not know if there were subsequent statements made on October 30 that could impact the voluntariness of the appeal waiver or the scope of the waiver. *See*, *e.g.*, *United States v. Kaufman*, 791 F.3d 86, 88 (D.C. Cir. 2015) (holding that "the district court made two problematic statements in explaining the waiver provision in the plea agreement" that "transformed the nature" of the written appeal waiver); *United States v. Godoy*, 706 F.3d 493, 495 (D.C. Cir. 2013) (where district court mischaracterized scope of appeal waiver provision during colloquy with the defendant, the oral

pronouncement controlled over the terms of the appeal waiver in the written plea agreement).

Furthermore, while the trial judge made a finding on October 25 that Mr. Khadr knowingly and involuntarily waived his right to trial, there is no concomitant finding that he knowingly and voluntarily waived his right to an appeal. App. 311–12. Thus, we do not even have before us a contemporaneous finding in the trial court that the appeal waiver was knowing and voluntary. Without the oral colloquy and the trial court's finding, we cannot adequately review whether the appeal waiver was knowing and involuntary and whether its scope encompasses the claims being asserted by Mr. Khadr. As we have previously explained,

> a written plea agreement *on its own* does not end the inquiry. Rather, the court of appeals must examine, among other things, the clarity of the written plea agreement, the defendant's signature on the agreement, defense counsel's signature on the agreement, the defendant's statements at the plea hearing, defense counsel's statements at the plea hearing, and the judge's questioning and statements at the plea hearing.

*United States v. Lee*, 888 F.3d 503, 507 (D.C. Cir. 2018) (Kavanaugh, J.) (emphasis in original).

In sum, we should not make a determination about the scope and validity of the appeal waiver in the first instance, and even if it were appropriate to do so, our precedent does not permit us to do so unless we have the complete record.[1] The

---

[1] After the CMCR dismissed the appeal and remanded the case, the Convening Authority made a finding in 2021 that the appeal waiver

majority has jumped the gun and prematurely dismissed the appeal by reaching the non-merits issue of waiver on an incomplete record and as if we are a court of first view, rather than a court of review. I therefore dissent.

---

was knowing and voluntary. App. 132. That finding was made after the order we have before us on review, so it is not properly before us. It also relies on the larger record, *see id.*, which, again, is not before us. The Convening Authority's finding should be reviewed by the CMCR in the first instance, before we speak on the issue.